May call the case. 3-2-3-0-1-7-1. The Claymoor Condominium Association Appellee by Gabrielle Comstock v. Karzanya Majewska. Appellant by Adam Oginski. Good afternoon, everyone. I would ask everyone to recognize that Presiding Justice McDade is joining us by video, live. And if you could just keep your voice up and speak a little closer to the microphone, that will help us with technical matters. Are both sides ready to proceed? Yes, Your Honor. Very well. Mr. Oginski, you may proceed. Thank you, Your Honor. May I introduce myself? Yes. Good afternoon, Your Honor. Good afternoon, Your Honor. Good afternoon, Your Honor. My name is Adam Oginski. I represent Petitioner Majewska. She's the lady in the suit in the back row. I'd like to just throw out some words at the beginning. Limited common elements, no open meeting, fiduciary duty of the Board, and whether the Board followed its rules. And we have three arguments before the Court today. One is, I'll start with what started this litigation, the genesis of it, was a letter that was received. And the letter was received by Ms. Majewska from counsel on behalf of the plaintiff. The letter said, in relevant part, at C-460, even if you had requested approval for said alteration, please be advised, it would have been denied as it's the association's position and so forth, what the position was. At that point, Your Honors, the approval for the building permit had been approved, the building permit had been posted, and my client was proceeding. What my client has not received to this date is an open meeting. What she received in October 2020 is something that I haven't found, that's not in any of the briefs. It doesn't exist. Something called a manager's meeting, which was held in October 2020. Why was the meeting held in October 2020? It seems from the views of the defendant, because the defendant filed a partial motion for summary judgment saying, hey, litigation under some of the precedent palm, others, litigation has to be commenced by the Board, by Board approval. And that never happened here. That still hasn't happened. In fact, there was what the record would show, there was a ratification attack. We submit that you can't ratify something that never happened, but even if that was arguendo proper, the record would show that that was not a public meeting, that there was confusion, and it's nobody, this isn't done deliberately, the Board just didn't know its duties. The Board said right before that meeting, oh, we are going to, we have to have an open meeting. They held a meeting on the next day, called a manager's meeting, no one, there's no record that anybody was invited, there's no record of a Board vote, there's no record of where it was or what happened. And by the way, if they're ratifying something, there's nothing in the record which says, okay, the Board voted on such and such a date relating to this issue. And the issue is, again, an approved issue, which has never been argued that there's, that my client violated anything, she got approval from the village. So then we go to fiduciary duty in honors of the Board. The Board has a fiduciary duty to keep the rats, and our Supreme Court, I think the Spanish Court, said, okay, you've got to follow the rules and regulations that are contract-like or contract. So here, what are the rules saying? There's two ways that they could have summoned this lady who's the owner of this 188,000 condo that she bought, she lives there with her two kids and husband since that time, bought it in 2020. What do the rules and regs say? And they, we're not changed for the purposes of this record. And we, there are no rules. So they say, your honors, okay, there's two ways to haul in somebody, because it's very limited what this Board can do. They can, they're under the Illinois Condominium Property Act and any rules and regulations. And so it's either a violation notice or a warning notice. That's it. There's no other way of hauling somebody in saying you've done something wrong. Here, counsel sends a violation notice saying that the Board's already, it's the position, and they call it attic space, that the space in the building shall remain unaltered by individual unit owners. So it's a position, but that has nothing to do with the fiduciary duty, and you've got to haul somebody in. Here in this case, look at Mr. McMahon. Oddly enough, I cite him in C-368 to 372 because I deposed him, and Mr. McMahon admits it's limited common elements. I would submit to take a segue, it's not common elements. How are limited common elements not a subset of common elements? They are most certainly, Your Honor, except when you're dealing with limited common elements, there are specific rules. So in other words, for the purposes of this matter, they're in the regulations, it says what happens when limited common elements are impacted. The term is used in the rules and rights, and the custom and habit here was that limited common elements, that limited common elements were stipulated by counsel in this trial, that limited common elements were at issue, and if they were at issue, the best evidence of what the Board's rules were, I don't know if they're in writing, but they were what they were, was you go to Mr. McMahon, who's the agent, and Mr. McMahon, like you did with the windows. Thankfully, we have that example because that's a limited common element. You don't go to the Board, you don't do anything, and then in terms, Your Honor, of how do they differ from common elements, it would be what they call an absurdity to put in the regulations that if a homeowner does something, then if common elements are impacted, then the homeowner has to pay and so forth. So here, you have a situation that what should have been done is not, hey, you don't like what we wrote already? Go and find a meeting of the Board. But who wrote this? Who signed this? There was no order, there was no Board that voted on anything. So then, the lawsuit is filed, and we bring this up, and very important, I think, because the whole foundation, I think, is a little bit sandy, if not completely sandy. Your Honor, the trial judge, Judge Hayes, relied on a statement made by Honorable Judge Fullerton, who was presiding in the case until he went to another position by order of the Chief Judge. And Judge Fullerton did not, he was administering a motion for partial summary judgment, was not opining on a trial or in the case, and Judge Fullerton indicated that this was, for these purposes, there was a statement that was made at least for the hearing point supplemental record 149. Judge Hayes used that, so we lost that motion for procedural summary judgment because Judge Fullerton said, hey, they gave you enough notice, but he didn't opine on anything else. And so, it's important to note that the whole decision of Judge Hayes is based on, she didn't say it, but it's kind of, I would argue, it's kind of a law of the case argument that doesn't exist here. But in terms of what didn't happen is then, go to the ratification. There is no chance, Your Honor, as I submit as an advocate, that if there was not an open meeting, then there's no way that anything can happen, that a lawsuit can be filed or anything that's ratified. If it's ratified, perhaps, but I don't know what you're ratifying. So, as of today, there is no open meeting where Mrs. Mayeska was summoned to the board where she had an opportunity. If we read 368 to 372 of Mr. McMahon's, this is the only time in the history, and he was around for a while, you know, as the person who worked for the board, the only time when people wouldn't be summoned, wouldn't be given written notices. Best evidence that this wasn't followed one time, and very importantly, because there's horrific consequences, right? I have my client based on this, based on the trial court's order. The best evidence that the rules were not followed, Your Honors, is that there's a couple of points in the record we will get, because this is Mayeska was dinged, as they say, for more, a different type of violation notices. And it said, come to the board, if you, you know, we will rule on it. It's not we ruled on it in secret without a record. No, not a single board minute, not a single anything, even as of today, that says we rule for this reason. Your Honors, what is a manager's meeting? You know, I made a quick, probably shouldn't have, but I've only heard the term in terms of my Little League managers experience before. I don't, that doesn't exist. That's what they did, and they, in five minutes, this board, to purport to try to correct the wrong they knew they had done, namely not initiated litigation. That's, of course, another error, not initiated litigation, to not allowing Mrs. Mayeska to come in before the board. You know, I called it a diktat, that's the word I can think of. Okay, now we're done with you because we've decided something because we've looked at something and there's no record of it. And even if, come to set up a meeting which is not required, that's not the normal procedure, even if you set up a meeting, we're not going to rule for you ever. And this is, unfortunately, what happened here. What's also, I think, beneficial in my client's position is that you will not find, of course, in the complaint, you'll not find the word limited common elements. And that's very, very important. You'll not find limited common elements in the demand letter, which purports to be of the authority on which the whole, you know, building is, or is based, the whole construct of this case is based. And that's extremely important because you have the stipulation and you have limited common elements at issue here. So it's, we asked, and summary judgment was granted also on this. That's kind of the core of our argument. There's a lot of things here that were not considered, we believe, by the trial judge in her determination, in addition to what we believe was an errant reliance on something it should have been relied on, that due process was given. Let me turn to that. Due process was not given at all to my client because she did not have any opportunity to understand or to come before the board or to have the board decide as to what's going on here. Why did I do this? What's wrong with this? That that has any impact on anything, on any health, safety, danger, anything at all. And if it does, then she should have been summoned, and this is the remedy that should be, in part. We would ask you, number one, on that basis alone, on the due process issues, and we believe the misreading of His Honor Judge Fullerton's statement, at least for the hearing point, that the summary judgment order should be withdrawn or should be vacated and the case sent to the trial court. Your Honors, my reading of the case law is de novo, you know, to review everything on this type of summary judgment, even if cross motions as they were summary judgments were filed. There's an interesting issue I wasn't able to parse out, and I'll give you my take on it, the attorney's fees, which I'll go to next. So attorney's fees here were entered on a deck action and on an injunction action. American rule applies, and one thing in our brief that I want to amend or correct, I had read through and said that Her Honor Judge Hayes had never used the word default. It turns out when I read the thing again the last week, there was an order, but it's too late. It doesn't matter in my mind because there was an order, Your Honors, where the default was entered after we brought a motion saying, hey, the Congo Association cannot file a petition for attorney's fees. Judge Hayes granted them the right to do so, which is her right, and they did so, but they can't ask for attorney's fees without Judge Hayes having declared default. Judge Hayes, it's not in our brief, but it's correct when I read it, did say when she denied our motion to strike the fee petition that a default had been entered. I would say that's too late and that that's the prerequisite. What is the default on? My client came to the court and denied. By the way, the record also shows, you know, we were denied even stuff like a deck action to file. We asked all our counterclaims. Our expert was tossed without any, we think, cognizable reason who would say this is all wrong in terms of how this procedure went. But with a declaratory judgment action, I don't believe the statute doesn't provide it. I don't think the case law, you know, I have the hex number, but I've never heard of it, of a deck action. And so that's something that should be thrown on an injunction. It was a contested issue, and then they connected it to attorney's fees. The statute did my client did something wrong, as they would, Your Honors, with, for example, fees that are owed or monies that are owed. So with respect to the matters that are stated, we would ask that the court vacate the ruling on the summary judgment, return the matter to trial court pursuant, I think the 366A5, forgive me, this court has the right to say things were not done right and grant summary judgment or otherwise dismiss the case. And I would say without prejudice, because frankly, if they did the right thing, if they summon her or give another violation notice, you know, they can proceed. They did nothing correctly here. The plaintiff is relying on summary, I'm sorry, the plaintiff is relying on common elements, which are completely different from the limited common elements, which they later agreed to, and no attorney's fee should ever have been awarded. And we ask for an opportunity either to go to trial or to have this case dismissed and proper procedures to be followed according to what we believe the statute says. And because they're jurisdictional, according to Palm, as I recall the case, Lakeshore, you've got to do this, you've got to do the open meeting, you've got to give her notice. And the first time in the history, Mr. McMahon, I say that this procedure was not followed, and this is where it led today. So we'd ask you to have her treated like everybody else and ask you for the relief we ask in our brief. Mr. Augustinsky, thank you. Justice McDade or Justice Albrecht, any questions? No. No. All right. You will have an opportunity in rebuttal. Thank you. Thank you, Your Honor. Thank you. Ms. Comstock. Good afternoon, Your Honors. I'm Gabriella Comstock, the attorney for Plain Work. Your Honors, this isn't a case where the plaintiff did everything wrong. This is a case that's a rather straightforward case. It involves a condominium association with a unit owner who purchased her unit subject to a declaration, which was recorded against her property. The defendant doesn't dispute that she's the owner of the property. She doesn't dispute that she raised her ceiling in her unit. The defendant doesn't dispute that the ceiling in her unit is part of the limited common elements. And she doesn't dispute that she didn't get the prior written approval of the Board of Directors. Before I go into some of the issues that were raised by counsel, I'd like to bring the court's attention to what was before the trial court with the pleadings. And the only complaint, the only pleading before the court was that by the plaintiff, which did seek declaratory and injunctive relief. There was no claim by the defendant. There was no claim related to fiduciary duties. The only claims, as indicated, were declaratory and injunctive relief. And it was a situation where the association was asking the court to declare that there had been a violation of the governing documents, the declaration. Not rules and regulations, the declaration. By a taking of the common elements, by an alteration of the common elements, which the declaration specifically states in paragraph 17 of the declaration, which is part of the record, in order for an owner to alter the common elements, the owner must obtain the board's prior approval. The defendant doesn't dispute that the ceiling is part of the limited common elements because the declaration does specifically state ceilings of the units are part of the limited common elements. Where the dispute is, is that the defendant's position is limited common elements are not common elements. And that was the crux of this case and the misunderstanding of this case by the defendant. As clearly articulated in the declaration and in the Condominium Property Act and case law, limited common elements are part of the common elements. That's specifically how it is defined in the Condominium Property Act and also the declaration. When we're looking at property within a condominium association, there's only two places that property can be a part of. It's either part of the common elements or it is part of a unit. If it is part of the common elements, then the next question is, is it part of the limited common elements? And the way we answer that question is by who gets to use and enjoy this area. Per the Illinois Condominium Property Act and per the declaration for the association, that part of the common elements that is enjoyed by everybody is common. And that which is only enjoyed by less than all of the unit owners is part of the limited common elements. But regardless, limited common elements are common elements. And the defendant has not cited to any authority as to why limited common elements are not part of the common elements. The declaration specifically supports that definition for common elements and it also defined what was part of the unit. And the declaration included a plat. And the plat identified the boundaries for the units. And the area in question here, which there's no doubt is a ceiling, which we no doubt above the top part, and this is a third floor unit, this plat shows that boundary for the ceiling of the unit and that above it is part of the common elements. And the Condominium Property Act specifically provides that when we are looking at a declaration, we also look at the plat. That's part of the condominium instruments for an association. That's what governs us. And the case law in Illinois supports that position as well. The defendant did receive a notice and that notice stated you are in violation because you altered the common elements. Counsel's right, it says you altered the common elements because that is what was altered. Limited common elements are part of the common elements. That's how paragraph 17 of the declaration was written, which is consistent with the law. She was advised if she disputed that she was in violation, she had the right to request a hearing and she could contact the board of directors. This isn't a case where a fine was imposed. This is a case, again, about declaratory and injunctive relief seeking to correct the violation. A hearing did not have to be given to her, but that opportunity for a hearing still was given to her. She did not respond. And the record shows she did not request a hearing. And the record shows at no time, not even any time after the lawsuit was filed, did she request a hearing. The record supports that. The case before your honors is a taking of the common elements, which the Condominium Property Act specifically prohibits because every owner within a condominium association owns a percentage of the common elements. And that percentage cannot be changed unless 100% of the unit owner approval is obtained. That's not an issue here because there is no evidence before your honors or before the trial court to show that unanimous approval was given. What is before the court and in the record and was before the trial court was that an alteration was made, a unilateral alteration to a unit, which extended the boundaries of that unit, which changed the boundaries of the unit as identified on the plat. And there was not 100% unit owner approval. And yes, the notice to the defendant did state, even if you had come to us beforehand, we couldn't have approved this because it's the board who is making sure that it's clear we are not authorizing a taking of the common elements. And there is an extensive case on the state of Illinois that specifically talks about what is a taking and what owners cannot do. And this situation was a little bit easier than what we saw in some of the other cases in the state where even just having a balcony encroach over common elements is considered a taking. This is more than that. This was literally taking that above your unit and taking it away from the common elements to make your unit, in that sense, bigger. It may have made it more beautiful, but that's not the standard. The standard that we all have to look at, that this court has to look at, is that which is stated within the Condominium Property Act. Did you change what you have exclusive use over? And did you take from the other owners that property that they own, that they have an interest? It is not correct to say there was nobody else affected by making this by enlarging the ceiling or by raising the ceiling. All of the owners were affected because their percentage of ownership was taken from them without them having the opportunity to approve it. And that is the other misconception in this case. This is a condominium association, and owners, all owners, are required to abide by the restrictions and by the covenants within those documents. Some of the arguments that were raised in counsel's argument just before the court focused on this being an issue that the property manager, Mr. McMahon, had indicated had never happened before. It's true. Taking of common elements isn't very common. So it was a very different situation. But that doesn't mean it's not part of a taking. It doesn't mean that we now reclassify limited common elements as not being common elements. Again, there is no allegation of fiduciary duty, but more importantly, the issue that was argued that a summons wasn't given to the defendant to come before the board is inaccurate. The notice that was sent in March of 2020 before the lawsuit was filed specifically said, you have the opportunity if you want it, and she chose not to take it. Has Judge Fullerton? Yes, Your Honor, did you? Yes, I have one question here. The association sent her a violation notice in November of 2020. And in that violation notice, it said that there was going to be a hearing on February 16th and that she could explain anything that she wanted to with regard to the violation at that time or ask questions. And it says that the board will proceed on the aforementioned date with or without your presence unless you request in writing that the board reschedule the same. Was that meeting held on February 16th? I believe you're referring to the one that would be her subsequent. This was a different violation that the unit owner was cited for, which was not the subject of the lawsuit. But she did receive other notices as it relates to other violations. That violation would not have been related to the violation for the subject of this lawsuit of the changing the ceiling or altering the ceiling. That was a different issue. So I'm sorry that I don't know off the top of my head if that hearing did in fact occur. But what I will say is that that violation and the other violation notices that were received by this unit owner from the association after the lawsuit had been filed were different types of violations, those related to rules and regulations. Whereas the subject here is a violation of the declaration. So you're saying that this particular violation that there was the meeting on February 16th was not this violation? Correct, Your Honor. It would not have been related to this violation. There were other violation notices that were not the subject of the lawsuit that the defendant had also been cited. So I suspect the record won't contain any evidence related to other violations because the only one that the association was seeking any relief on and the only one brought before the court was that related to altering of the ceiling. Okay, thank you. Counsel had referred to a manager's meeting having occurred on October 20th, 2020 and also indicated that this was a violation of POM, that the board didn't vote on an open meeting and it took away essentially the jurisdiction of the trial court. First of all, the title of a meeting is not what matters. What matters is the actions that were taken. And as the record does indicate, as supported in the documents supported with the motion for summary judgment filed by the association, there was a record of a vote taken by the board of directors and there was record that notice of that meeting was given to the unit owners. Whether unit owners attend a meeting, we never know, but all that the Condo Act does require is that notice be given and that was given. I don't disagree with counsel that I'm not really sure what a manager's meeting is, but what I suspect it is, is board of managers and that's why they're calling it managers. As the Condominium Property Act does often, goes back and forth between using board of directors versus board of managers and it does sometimes create some confusion, but that doesn't matter because what matters is the board did vote. And what POM versus 2800 Lakeshore Drive said was, yes, boards have to vote in an open meeting, but let's remember what the issue before the court in that case was related to voting on litigation and what the appellate court affirmed that the trial court did. In that case, the court affirmed the ratification by the board in that case who did not vote in an open meeting prior to defending its interest in the POM case.  to the board of directors, you didn't vote on this in an open meeting and you should have voted. So now you have 30 days to go and vote. POM versus 2800 Lakeshore Drive actually supports that which was done by this board of directors on October 20th, 2020. And as supported by the case law afterwards, which was Lake Point Tower versus Waller, there is no requirement that you have to vote on the litigation in order for a court to have jurisdiction. Yes, the board should vote and the board did vote and the board ratified that vote in an open meeting consistent with the case law that allows ratification of board votes in an open meeting and also consistent with that which is stated in POM versus 2800. As it relates to the issue of attorney's fees, the trial court did consider all that was before her, a detailed attorney's fee affidavit with the documents to support it. As Judge Hayes indicated, she did find a default. She may not have used the magic words when she ruled in December, but her ruling specifically identified how the defendant violated the declaration and she used that exact language, which is the transcript in this court's record. And she then said, granted the right to file a petition for fees as allowed for under the declaration in the Condominium Property Act. At no time at the trial did the defendant raise anything other than a general objection to a filing of petition for fees. There was nothing as the case law requires as it relates to challenging the reasonableness and Judge Hayes noted that. Judge Hayes acted properly at the trial level when she granted a motion for summary judgment in favor of the association because the material issues in this case, sorry, the material questions in this case were not material to the issues before the court. And for this reason, this court should affirm that which was done at the trial court. Any questions from Justice McDavid, Justice Albert? I have none. Thank you, Your Honor. Thank you. Mr. Argostinsky, rebuttal. Thank you, Your Honor. I'll turn first to the last argument that counsel made. The Chinese fees issues, I think that's up to the court and that all falls if the summary judgment falls. But if it would not fall, I think there's substantial reasons to throw that out because part of it's in rem, as we've written. I'm sorry, the only part that possibly the board had authority for would be in rem. Here, there's a judgment that's centered against an individual. And also, if the court takes a look at the fee petition, I think it's a number of paragraphs and it's never fleshed out. It may provide the standards, but it just says this is how much we charged and we're experienced lawyers. The court never went in. What the court said was basically, and this is, I think, erroneous from my client's point of view, look at it. You litigated this. You didn't agree with what they said, so attorney's fees had to be spent, but we submitted all that stuff was wrong. Counsel admits next on the notice, I think, because what Your Honor asked was there was another violation and they went through the way it was supposed to be done. There's only two ways to go, notice of violation or a warning. And you've got to do it right. There's nothing, Your Honors, that says, oh, it's for a declaration amount. That's just, I disagree with that. That's nowhere in the record. Open meeting again. They didn't do an open meeting and it's really jurisdictional if they don't vote on litigation. I think that's in the briefs. You cannot just, this is an association, it's not Joe Smith going to counsel and saying, okay, we'll sue somebody. They have to vote. There would be no reason, Your Honors, for this alleged ratification and the ratification itself, look what it says. It says something about architectural matters. Show me the, well, I don't think that one can show that what the board reportedly ruled on seven months later has anything to do with my client's unit or any of the issues of case. It talked about generalities. It mentioned 3G only in the email that one of the board persons said, yeah, we weren't told about it and we have to do it in an open meeting. They admit it and a day later, where's the notice? There's nothing that says that it was delivered to my client or nobody. It was the day before that they were saying we have to have an open meeting and they have the manager's meeting and it's, what in the world is that? So for all of, Your Honors, their summary judgment should be overturned. We believe that either we should be granted summary judgment or the case should be returned to trial court. No attorney's fees should be given at all for sure against the individual. The board has no authority ever to do that. Zero. It could be in rem and we think the amounts are tremendously large. The court didn't take that into account. It's, again, I'm only representing what the deed says, okay, that it was $188,000 she bought it for and she got dinged with almost $100,000 in fees and now as the record does show since we filed a motion, they're trying to evict her, which is another issue we're dealing with. But the fact of the matter is they didn't do the right thing here. There's no opportunity for her to be heard as there were in these other matters and this whole matter should be thrown out because it's based on something that was not proper on a demand, on a diktat, that we're never going to change anything. And what board voted? That's the final point. What board voted when on what relating to some allegation that counsel wrote that started this litigation? Nobody knows and as far as we know, it didn't happen. As far as is known, maybe Mr. McMahon spoke to Mr. Cossier, the board president then, and Mr. Cossier then told counsel to write a letter. That has nothing to do with Illinois Condemning Law and on that basis alone, all of this also ought to be overturned. In terms of the, your honor, the, oh, here's what they wrote when this alleged open meeting, this non-existent board meeting, the allegations are, quote, violation of architectural approval. What does that mean? Guidelines and provisions of the declaration. That's what's listed, your honors, in the October 20th, 2020 document in which they voted on. Where's the facts? What is it? It's either through a motion to be thrown out as fact or void. Illinois is a fact pleading state. That's what this open meeting got her. Supposedly what the plaintiff of hers is that that was enough to say. They didn't vote on nothing. They put the Chicago parlance. They voted on a general thing with probably one day of notice to them from what the record shows and there's, how fair is that? Even if they had, there's no record they ever gave Mrs. Majewska any notice of such a meeting and at such a meeting, she would have had an opportunity to discuss. Finally, listen to what it, look what it says in there. There will be no conversation. That's not the word that's used, but I remember that expression. No discussion by anybody and that's what happened. No discussion. We ask you to kindly consider ruling for Mrs. Majewska as requested in the briefing today. Thank you, your honors. We thank both sides for a spirited debate. We will take the matter under advisement and issue a decision in due course.